**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

STATE FARM FIRE AND CASUALTY CO.,    )
       )
       Plaintiff,       )
       )
vs       )     Civil Action No. 2:22-1465
       )     Magistrate Judge Patricia L. Dodge
GINO GRAFFIA, as subrogee of ANTOINE    )
DION THOMAS,       )
       )
       Defendant.       )

## <u>MEMORANDUM OPINION</u>

Plaintiff State Farm Fire and Casualty Company ("State Farm") seeks a declaratory judgment that it does not owe a duty to indemnify Defendant Gino Graffia ("Graffia"), as subrogee of State Farm's insured, Antoine Dion Thomas ("Thomas"). In turn, Graffia has filed several counterclaims against State Farm in which he seeks a declaration that State Farm breached its contractual duties to Thomas and acted in bad faith in violation of 42 Pa. C.S. § 8371.

Pending before the Court is State Farm's partial motion to dismiss (ECF No. 49) which seeks dismissal of Graffia's bad faith counterclaim. For the reasons below, its motion will be denied.[1]

### I.   <u>Relevant Procedural History</u>

State Farm commenced this action on October 17, 2022, naming Thomas as the defendant. Diversity of citizenship jurisdiction was invoked pursuant to 28 U.S.C. § 1332.

State Farm's action relates to Businessowners Policy No. 98-CV-U413-3 for the policy

---

[1] The parties have fully consented to jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). See ECF Nos. 55, 58.

period December 10, 2018 to December 10, 2019 ("the Policy") that was issued to Hair on Bedford Square, LLC ("HOBS"), a barbershop owned by Thomas. (ECF No. 34 ¶¶ 9-11 & Ex. A.) State Farm's Complaint sought a declaration that it did not owe a duty to defend Thomas[2] in an action filed in in the Court of Common Pleas of Allegheny County styled as *Gino Graffia v. Antoine Dion Thomas*, Case No. GD-21-002680 ("Underlying Action"). Further, State Farm sought a declaration that it had no duty to indemnify Thomas for any damages sought in the Underlying Action. Its request was based on four Policy provisions: (1) there was no "occurrence" (Count I); (2) exclusion for intentional acts (Count II); (3) the employer's liability exclusion (Count III); and (4) breach of the notice condition (Count IV).

An Amended Complaint was filed on January 30, 2023 (ECF No. 10) that pleaded additional factual allegations relating to diversity of citizenship.

Because Thomas did not respond to the Complaint, State Farm requested the entry of default (ECF No. 13), which was entered by the Clerk of Court on March 3, 2023 (ECF No. 14). State Farm then moved for default judgment (ECF No. 15). On March 23, 2023, a Report and Recommendation ("R&R") was issued that recommended that State Farm's motion be granted (ECF No. 17).

Graffia subsequently moved to intervene (ECF No. 18) and attempted to file objections to the R&R (ECF No. 20). State Farm opposed the motion to intervene (ECF No. 22) and moved to strike the objections (ECF No. 24).

This Court issued an R&R on May 26, 2023, recommending that Graffia's motion to intervene be denied (ECF No. 26). After several motions for extension of time were granted,

---

[2] Thomas is an insured under the Policy.

State Farm moved to stay this action (ECF No. 31) for several reasons, including the fact that Graffia intended to amend his complaint in the Underlying Action and it had not yet proceeded to trial. Its motion was granted and the case was stayed and administratively closed. (ECF Nos. 32, 33.)[3]

On April 4, 2024, after the stay was lifted, State Farm filed the Second Amended Complaint ("SAC") here. It named Graffia as the defendant because the insured had assigned his claims under the Policy to Graffia. (ECF No. 34.)[4] The SAC includes the same four claims as the original and amended Complaints, the only difference being that State Farm now seeks a declaration only that it has no duty to indemnify Thomas for the verdict entered against him in the Underlying Action.

Graffia then filed an Answer and Affirmative Defenses to Second Amended Complaint with Counterclaims (ECF No. 35) in which he asserts three counterclaims. Count I seeks a declaration that State Farm has a duty to indemnify Thomas with respect to the verdict entered against him. In Count II, Graffia alleges that State Farm breached its contractual duties under the Policy, and in Count III, he asserts a claim of bad faith under 42 Pa. C.S. § 8371. Graffia filed an Amended Answer and Counterclaim on June 21, 2024 (ECF No. 48).

On July 3, 2024, State Farm filed a partial motion to dismiss the bad faith claim in Count III of the Counterclaim (ECF No. 49). Its motion has been fully briefed (ECF Nos. 50, 59, 65).[5]

_____

[3] As a result of these events, the two R&Rs were not addressed by the District Court.
[4] Graffia and Thomas entered into an Assignment Agreement on March 26, 2024. (ECF No. 34 Ex. C.)
[5] On July 25, 2024, the parties submitted a joint consent to proceed before United States Magistrate Judge (ECF No. 55). The Court held an initial case management conference on August 1, 2024. However, the issuance of a Case Management Order has been deferred pending resolution of the partial motion to dismiss (ECF No. 63).

II.    **Relevant Factual Allegations**

A.  The Underlying Action

Graffia commenced the Underlying Action against Thomas in March 2021. According to the original Complaint, Thomas is the sole proprietor of HOBS, a barbershop that provides hair cutting and styling services to the public. (SAC ¶¶ 23-25 & Exs. D, E.) Graffia alleged that Thomas employed him as an assistant at HOBS. His responsibilities included washing customers' hair, cleaning, and acting as Thomas's personal assistant. Thomas allegedly routinely kept a fully loaded handgun at HOBS in a drawer behind his barber chair. According to the Complaint, Thomas had a history of recklessly firing his handgun in the workplace without cause. (*Id.* ¶¶ 26-29.)[6]

The Complaint included these facts in support of Graffia's claims:

- On September 11, 2019, Graffia, while working at HOBS, was using a hair dryer to dry a customer's hair.

- Thomas asked Graffia to give him the hair dryer so he could use it.

- Graffia pointed the hair dryer at Thomas in a playful manner, pretending it was a gun.

- Thomas pulled out his handgun and shot Graffia in the ankle.

(*Id.* ¶ 30.) The original Complaint asserted causes of action for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, and assault and battery. (*Id.* ¶¶ 31-35.)

---

[6] In his Answer in this action, Graffia admits that these were allegations in his Complaint, but contends that the subsequent testimony at the trial supports the allegations of the Amended Complaint in the Underlying Action. He claims that "the contents of the Original Complaint are irrelevant and immaterial to State Farm's indemnity obligations." (ECF No. 48 ¶¶ 26-29).

Thomas did not answer or otherwise respond to the Complaint and default judgment on liability was entered against Thomas on June 2, 2021, with damages to be determined at trial. (*Id.* ¶¶ 36-37 & Ex. F.)

According to State Farm, an attorney entered an appearance for Thomas on June 11, 2021 but made no other filings or attempt to open the default judgment entered against Thomas. It was not until June 30, 2022, over a year later, that counsel for Thomas advised State Farm of the Underlying Action for the first time. As a result, State Farm retained Thomas McDonnell as defense counsel on behalf of Thomas and provided a defense to Thomas pursuant to a reservation of rights dated August 23, 2022. (*Id.* ¶¶ 38-41 & Ex. B.)

Subsequently, Thomas and Graffia entered into an agreement by which Thomas assigned his rights under the Policy to Graffia. (*Id.* ¶ 16 & Ex. C.) Graffia then sought and was granted permission to amend his complaint. (*Id.* ¶¶ 43-44.) The Amended Complaint no longer specifically alleges that Graffia was employed by Thomas, but simply states that Graffia was present inside HOBS on September 11, 2019.

The Amended Complaint described the incident as follows:

- Thomas asked Graffia to give him a hair dryer so that he could use it.

- Graffia pointed the hair dryer at Thomas in a playful manner, pretending it was a gun.

- Reacting to Graffia's joke, Thomas pulled out his handgun.

- Thomas accidentally discharged his handgun, and the bullet ricocheted off the floor before striking Plaintiff in the ankle.

(*Id.* ¶¶ 45-46 & Ex. G.) The Amended Complaint asserts only two claims, negligence and negligent infliction of emotional distress. (*Id.* ¶¶ 47-48.)

A non-jury trial on the issue of damages was conducted in the Court of Common Pleas before the Honorable Arnold Klein on June 14, 2023. (*Id.* ¶ 42.) Graffia's testimony during the trial explained how the shooting incident occurred, described his duties at HOBS and identified the nature of his injuries. State Farm notes that he described his duties at HOBS as including "clean[ing] the shop, clean[ing] his barber equipment, clean[ing] up his hair and assisting with daily tasks that [Thomas] wanted me to do regarding his bank situations." Graffia testified that he first was paid $20.00 per day, which was later increased to $40.00 per day and eventually to $60.00 to $80.00 per day. He was paid even after the incident occurred but as of the date of the trial, was no longer working at HOBS. (*Id.* ¶¶ 49-57 & Ex. H.)[7]

Following the trial, a verdict of $68,000 was entered in favor of Graffia and against Thomas. Graffia filed a post-trial motion and appealed the judgment to the Pennsylvania Superior Court. (*Id.* ¶¶ 58-59 & Ex. I.)[8]

### B. Graffia's Allegations about the Policy and the Bad Faith Claim

Graffia contends that the claims outlined in the Amended Complaint in the Underlying Action, and as presented at trial, are covered under the Policy. According to Graffia, because Thomas was liable on claims of negligence and negligent infliction of emotional distress, his claims fall within the coverage under the Policy. (Am. Answer & Countercl. ¶¶ 113-14) (ECF No. 48.) Thus, under the terms of the Policy, State Farm must indemnify Thomas in connection

---

[7] State Farm cites these portions of the record to support its conclusion that Graffia was an employee of HOBS. As noted below, Graffia cites to other portions of the record to support his contention that he was not an employee.

[8] Graffia's post-trial motion was denied by Judge Klein on November 17, 2023. (ECF No. 34 Ex. D at 2.) According to the Superior Court docket, the judgment was affirmed on December 30, 2024. *See Graffia v. Thomas*, No. 1497 WDA 2023, 2024 WL 5245284 (Pa. Super. Ct. Dec. 30, 2024).

with the judgment entered against him in the Underlying Action as well as any modification of the judgment that may result from Graffia's appeal. (*Id.* ¶ 111.)

Graffia alleges in Court III of his Counterclaim that State Farm engaged in bad faith conduct toward its insured in violation of 42 Pa. C.S. § 8371. Graffia alleges that State Farm is liable for:

> a. Failing to defend Thomas in a manner designed to minimize Thomas's risk of a personal, uninsured judgment stemming from the Underlying Action, while instead prioritizing State Farm's own interests in avoiding responsibility for any verdict and judgment resulting from the Underlying Action;
>
> b. Ignoring evidence supporting the application of COVERAGE L to the bodily injuries claimed by Graffia in the Underlying Action;
>
> c. Assuming as fact that Thomas intended to fire his gun at Graffia—citing only to the trial testimony of the Plaintiff in the Underlying Action, who did not specifically comment on Thomas's intent, while conducting no investigation regarding Thomas's position;
>
> d. Leveraging its insured's interest against self-incrimination by pursuing declaratory relief against its insured before issuance of a verdict by filing during the time obtained in the Underlying Action by Thomas's motion seeking continuance of the trial;
>
> e. Persisting in the same coverage position in spite of evidence disputing and undercutting the facts relied upon by State Farm to deny coverage in spite of the approach to Thomas's defense in the Underlying Action and/or Thomas's concerns regarding self-incrimination;
>
> f. Cherry-picking trial testimony alleged to support that Graffia was an employee of Thomas or HOBS, while ignoring Thomas's unambiguous dispute of this fact in his verified discovery responses proffered while Thomas was represented by State Farm counsel in the Underlying Action; and
>
> g. Failing to meaningfully engage in settlement discussions on Thomas's behalf.

(ECF No. 48 ¶ 177.)

Graffia notes that counsel retained by State Farm to represent Thomas under a reservation of rights after the default judgment was entered made no attempt to open or strike it. Nor did he

call Thomas at trial to testify. Graffia argues that "State Farm now opportunistically seeks to use the lack of testimony from Thomas against him by citing Graffia's testimony about Thomas's 'intent' in an effort to bring this matter within State Farm Policy exclusions." (*Id.* ¶¶ 116-17.) He contends that State Farm used its defense of Thomas as an opportunity not to protect Thomas but to optimize the record in the Underlying Action to support its efforts to avoid its indemnity obligation to its insured, Thomas. (*Id.* ¶ 119.)

Alternatively, Graffia alleges that "State Farm's handling of its defense of [Thomas] in the Underlying Action, which permitted Graffia to give unrebutted testimony, precludes the factual determinations necessary to make coverage determinations, which requires that State Farm's duty to indemnify follows its duty to defend." (*Id.* ¶ 120.) He argues that for example, if Thomas had testified that Graffia was an employee, Thomas might have been able to successfully assert that worker's compensation was Graffia's exclusive remedy for his claims. (*Id.* ¶ 121.)

Graffia claims that at all times after State Farm became involved in the Underlying Action, he acted to minimize any prejudice to State Farm as a result to Thomas's delayed notice of the Underlying Action. He asserts that these actions included consenting to the request of McDonnell to continue the trial; consenting to be deposed by McDonnell; (3) attending an independent medical exam (IME) requested by McDonnell; and (4) consenting to McDonnell's belated filing of a pretrial statement. (*Id.* ¶¶ 124-28.) Consistent with this conduct, Graffia now claims that he would have considered a request to open the default judgment against Thomas. But State Farm did not make such a request, instead commencing this action during the additional time it secured because of the continuance of trial in the Underlying Action. (*Id.* ¶¶ 129-30.)

8

Graffia also complains that State Farm did not change its coverage position even after he filed the Amended Complaint in the Underlying Action. Moreover, State Farm now attempts to use Graffia's default judgment against Thomas and the lack of testimony from Thomas in the Underlying Action in order to bring this matter within the Policy exclusions. Similarly, State Farm relies on the default judgment as evidence of prejudice to support the lack of notice exclusion. (*Id.* ¶¶ 132, 135-36.)

Graffia notes that State Farm continues to argue for an exclusion because Graffia was an employee of HOBS, even though Thomas stated in a discovery response while he was represented by McDonnell that he had no employees at the time of the incident. (*Id.* ¶¶ 137-41, 148.) He also claims that State Farm refused to meaningfully participate in settlement discussions even after the trial court in the Underlying Action delayed its verdict to allow the parties to discuss settlement. Graffia asserts that he made a settlement demand, but State Farm made no settlement offer on behalf of Thomas. (*Id.* ¶¶ 152-54.)[9]

III.    **Standard of Review**

"Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d

---

[9] In its brief, State Farm asserts that it did make a settlement offer in March 2023, but Graffia rejected it. (ECF No. 40 at 13 n.6.)

203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations . . . a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). The SAC attaches the Policy, the reservation of rights, the assignment agreement between Thomas and Graffia, the Common Pleas court docket sheet and various filings from the Underlying Action, including the transcript of the trial on damages. The parties' briefs also attach filings from the Underlying Action. All of these documents may be considered without converting the motion into a motion for summary judgment.

## IV.    <u>Analysis</u>

A bad faith claim is distinct from the underlying contractual insurance claim from which a dispute arose. *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792 (Pa. Super. 1997), *appeal denied*, 717 A.2d 1028 (Pa. 1998). In order to prevail in a bad faith insurance claim, a plaintiff must show that "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017).

Further, a plaintiff must allege facts in support of both prongs. *Slinger v. Allstate Mut.*

10

*Auto Ins. Co.,* 115 F.3d 230, 233 (3d Cir. 1997). *See also Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (3d Cir. 2012) (bad faith claim alleging that insurer "engaged in unfair settlement negotiations" without details describing what was unfair about the negotiations was insufficient); *Harris for Estate of Harris v. Allstate Vehicle & Prop. Ins. Co.*, 2020 WL 4470402, at *3 (E.D. Pa. Aug. 4, 2020) (allegations that insurer "misrepresent[ed] pertinent facts or policy provisions relating to coverages at issue" and "sen[t] correspondence falsely representing" that the plaintiff was not entitled to benefits under the Policy failed to explain what those misrepresentations may have been); *Cappuccio v. State Farm Fire & Cas. Ins. Co.*, 2020 WL 2307340, at *3 (E.D. Pa. May 8, 2020) (allegation that insurer "fail[ed] to complete a prompt and thorough investigation" into the plaintiffs' claim was insufficient).

State Farm correctly argues that whether an insurer acted reasonably is an objective standard. *See Williams v. Hartford Cas. Ins. Co.*, 83 F. Supp. 2d 567, 574 (E.D. Pa. 2000) ("The court believes that the first prong of the . . . test is an objective one: that is if there is a reasonable basis for delaying resolution of a claim, even if it is clear that the insurer did not rely on that reason, there cannot, as a matter of law be bad faith."), *aff'd mem.*, 261 F.3d 495 (3d Cir. 2001); *Mann v. UNUM Life Ins. Co. of Am.*, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003) ("To defeat a bad faith claim, the insurance company need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion. Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action."); *Estakhrian v. Cont'l Gen. Ins. Co.*, 2006 WL 8459741, at *7 (E.D. Pa. Dec. 19, 2006) ("Even assuming, *arguendo*, that Defendant doing things differently would have improved the handling of the claim from Plaintiff's standpoint, that Defendant's actions *could have been* improved does not

mean that its unimproved actions arose to bad faith.")

The Court of Appeals has held that "mere negligence on the part of the insurer is insufficient to constitute bad faith; recklessness, however, can support a finding of bad faith." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994). Moreover, the "law is clear that the litigation of legitimate issues of coverage does not constitute bad faith." *Victoria Ins. Co. v. Ren*, 2008 WL 2371850, at *2 (E.D. Pa. June 9, 2008). "Federal district courts across Pennsylvania have held that filing a declaratory judgment action does not, without more, give rise to a claim under § 8371." *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, 423 F. Supp. 3d 139, 159 (W.D. Pa. 2019) (citations omitted).

At the same time, however, "the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation." *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. 1999). *See also W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 313 (3d Cir. 2003) ("using litigation in a bad faith effort to evade a duty owed under a policy would be actionable under Section 8371.") Thus, an insurer can be found liable for bad faith if it files a declaratory judgment action and engages in other actionable conduct. *See Ironshore Specialty Ins. Co.*, 423 F. Supp. 3d at 160. "In the third party context, 'bad faith' encompasses the manner by which an insurer discharges its obligations of defense and indemnification." *McMahon v. Med. Protective Co.*, 92 F. Supp. 3d 367, 388 (W.D. Pa. 2015) (citation omitted).

As an initial matter, State Farm argues that Graffia does not support his contention that he can assert a bad faith claim against State Farm based on McDonnell's actions or inactions in representing Thomas. (ECF No. 50 at 7.) Although this is an accurate observation, it is equally true that State Farm has cited no authority which would preclude an insurer from being found to

have engaged in bad faith, at least in some cases, based on the actions of an attorney it retained to represent the insured. The Court's research suggests that this question is not easily answered.[10] Because the parties have not fully briefed this issue, the Court will, for the purpose of a motion to dismiss, reach no decision about whether State Farm could be held liable for bad faith based on the actions or omissions of counsel retained to defend Thomas.

State Farm also notes that even though Thomas waited for over a year before placing State Farm on notice of the Underlying Action, it nonetheless retained counsel to represent him. Further, counsel for Thomas successfully moved to continue the trial so that he could prepare a proper defense of Thomas by deposing Graffia and scheduling his IME. It also argues, McDonnell defended Thomas at trial and limited the damages obtained by Graffia. And McDonnell has continued to represent Thomas during Graffia's appeal.

Graffia does not dispute that standing alone, State Farm's provision of a defense for Thomas or its commencement of a declaratory judgment action represents bad faith. Broadly speaking, however, he alleges that State Farm's failure to defend Thomas in a way that would minimize the risk to him of an uninsured judgment in the Underlying Action, and instead, prioritized State Farm's own interests, represents bad faith. He contends, among other things,

---

[10] *Compare Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963) (a policy provision asserting the right to handle all claims against the insured places the insurer in a fiduciary position toward the insured), *Klinger*, 115 F.3d 230, 234 n.2 (3d Cir. 1997) ("representation is not an excuse for the insurer's failure to perform its obligations under the policy it issued to the insured") *and NIA Learning Ctr., Inc. v. Empire Fire & Marine Ins. Cos.,* Civil No. 05–5178, 2009 WL 3245424, at *9 (E.D. Pa. Oct. 1, 2009) ("In the third party context, 'bad faith' encompasses the manner by which an insurer discharges its obligations of defense and indemnification") *with Ingersoll-Rand Equip. Corp. v. Transportation Ins. Co.*, 963 F. Supp. 452 (M.D. Pa. 1997) (predicting that Pennsylvania courts would find an independent contractor relationship between insurers and defense counsel hired to represent insureds, such that the lawyer's negligence cannot be imputed to the insurer).

that State Farm leveraged its insured's interest against self-incrimination to its benefit; assumed as fact without any investigation that Thomas engaged in intentional conduct when he shot Graffia; failed to attempt to open the default judgment against Thomas; and failed to assert that Graffia was Thomas's employee, which would eliminate Thomas' personal liability. According to Graffia, this conduct worked in State Farm's interests and against those of Thomas and thus is sufficient to support a bad faith claim.

In support of its motion, State Farm highlights several contentions of Graffia, each of which will be discussed.

A.  Failure to Open the Judgment

Graffia contends that State Farm operated in bad faith by failing to attempt to open the default judgment against Thomas, thereby limiting the trial to an assessment of damages. State Farm responds that McDonnell could not have ethically made a good-faith argument to open the judgment. *See* PA.R.P.C. 3.1 and 3.3.

Under Pennsylvania law:

> A petition to open a judgment is addressed to the equitable powers of the court and is a matter of judicial discretion. The court will only exercise this discretion when (1) the petition has been promptly filed; (2) a meritorious defense can be shown; and (3) the failure to appear can be excused.

*Schultz v. Erie Ins. Exch.*, 477 A.2d 471, 472 (Pa. 1984) (citing *Balk v. Ford Motor Co.*, 285 A.2d 128, 130 (Pa. 1971)). *See* Pa. R. Civ. P. 237.3(b)(1), comment (if a defendant files a petition to open a judgment more than 10 days after entry of the judgment, the defendant must comply with the *Schultz* factors). Although the law speaks of a court's equitable powers, "the trial court cannot open a default judgment based on the 'equities' of the case when the defendant has failed to establish all three of the required criteria." *Castings Condo. Ass'n, Inc. v. Klein*, 663

A.2d 220, 225 (Pa. Super. 1995). *See also U.S. Bank Nat'l Ass'n for Pennsylvania Hous. Fin. Agency v. Watters*, 163 A.3d 1019, 1028 (Pa. Super. 2017) ("If a petition to open a default judgment fails to fulfill any one prong of this test, then the petition must be denied.")

State Farm argues that McDonnell could not have met any of the three required elements for opening a default judgment. First, Thomas had been in default for over a year by the time he notified State Farm of the Underlying Action. As a result, McDonnell could not have submitted a "timely" petition to open. Second, it contends that there were no meritorious defenses with respect to Thomas' liability in Underlying Action because it was undisputed that Thomas shot Graffia. Third, no explanation could have been made for Thomas's "failure to appear" because, in fact, he did appear through counsel around one week after the default judgment was entered, but his privately retained counsel made no effort to open the judgment before Thomas finally notified State Farm about the claim.

Graffia has not responded to the first and third points. Rather, he argues that, if McDonnell had moved to open the judgment, he could have argued that Graffia was Thomas's employee, which would have been a meritorious and complete defense to Graffia's claims because Graffia would have been limited to worker's compensation benefits. 77 P.S. § 481(a). Graffia contends that counsel retained by State Farm did not make this argument so that State Farm could preserve its ability to assert that there was no coverage for Thomas because of the employer's liability exclusion in the Policy.[11]

---

[11] State Farm responds that Graffia's argument makes no sense. Had McDonnell successfully argued that Graffia was Thomas's employee, then—as Graffia acknowledges—Graffia would not have recovered anything in the Underlying Action and there would be no basis to seek indemnification from State Farm under the Policy. The issue here, however, is whether State Farm's actions were taken in bad faith to its insured, Thomas, in the Underlying Action by

There are disputed and materially different allegations by the parties as well as in those the public records about whether Graffia was an employee of either HOBS or Thomas when he was shot. Thus, it is possible that had McDonnell succeeded in opening the default judgment, he could have sought to prove that Graffia was an employee, thereby eliminating Graffia's claims against Thomas in the Underlying Action. While State Farm is correct that this would have eliminated any claim for indemnification, it also would have ensured that Thomas would not be subject to liability for which he was uninsured and thus personally responsible.

As to the other two elements, the Court must consider this matter based on the standard applicable to a motion to dismiss. As to the timeliness of seeking to open a default, "the law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timely. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay." *Castings Condo. Ass'n, Inc. v. Klein*, 663 A.2d 220, 223 (Pa. Super. 1995). *See Com., Off. of Atty. Gen., Bureau of Consumer Prot. v. Lubisky*, 88 A.3d 328, 334 (Pa. Commw. 2014) (petition filed 435 days after judgment was received was not prompt action).

While the Court is extremely skeptical that a motion to open the default more than a year after it was entered would have succeeded,[12] it cannot conclude at the motion to dismiss stage

---

failing to assert that Graffia was an employee of Thomas.

[12] The Court acknowledges that Pennsylvania courts have found delays of less than 50 days to be excessive. *See McCoy v. Pub. Acceptance Corp.,* 305 A.2d 698, 700 (Pa. 1973) (delay of "two and one-half weeks can hardly be considered prompt"); *Flynn v. Am. W. Airlines,* 742 A.2d 695, 698 (Pa. Super. 1999) (defendant offered no explanation why petition to open was not filed until 24 days after receiving notice thereof); *B.C.Y., Inc. Equip. Leasing Assocs. v. Bukovich*, 390 A.2d 276, 278 (Pa. Super. 1978) ("Even though a delay of 21 days is not excessive, it can hardly be considered prompt."). Further, "[i]n cases where [ ] appellate courts have found a 'prompt' and timely filing of [a] petition to open a default judgment, the period of delay has normally been

that the Court of Common Pleas would not have agreed to do so under any circumstances.

As for the issue of whether the failure to appear can be excused, it is currently unknown as to why Thomas failed to appear before default was entered. As the public record confirms, however, an attorney did appear on behalf of Thomas shortly after the default judgment was entered. It is further unclear why Thomas' original counsel took no action to lift the default. In a motion for continuance filed by Graffia in February 2022 to continue the trial scheduled to proceed in March 2022, Graffia noted that the parties "agreed to seek a continuance in this matter to accommodate scheduling conflicts, continue to engage in settlement discussions, and to clarify Defendant's potential insurance coverage." The motion also notes that "Defendant's counsel," that is, prior counsel retained by Thomas, consented to the motion and extension. While the representation of prior counsel for Thomas did not include attempting to lift the default he was, in some respects, appearing for and defending Thomas by engaging in discussions with counsel for Graffia about settlement and insurance coverage. Thus, it could be argued that Thomas' failure to appear before the entry of default, followed almost immediately by the appearance of his attorney, who then engaged in at least some efforts on his behalf, may be explained or excused for reasons not yet known.

At this point, it is unknown why McDonnell chose not to move to open the default or whether State Farm can be liable for his actions. While the Court does not conclude, suggest or imply in any way that McDonnell's representation was designed to benefit State Farm rather than for the interests of his client, it cannot reach any conclusion about the basis for his decision

---

less than one month." *U.S. Bank N.A. v. Mallory*, 982 A.2d 986, 995 (Pa. Super. 2009). *See also Madrid v. Alpine Mountain Corp.*, 24 A.3d 380, 383 (Pa. Super. 2011) (citing cases finding unexplained delays of 37, 41, and 47 days untimely). At the same time, it is impossible to predict with any certainty how the Court of Common Pleas would have ruled.

without a more fully developed record.

    B.  <u>Employer's Liability Exclusion</u>

State Farm also argues that it cannot have engaged in bad faith by asserting the employer's liability exclusion because Graffia was an employee of HOBS/Thomas. It notes that Thomas paid Graffia a fixed wage, at fixed intervals, for work directly related to the business of HOBS, that was done under Thomas's supervision and at his direction. It also notes that Graffia referred to himself as Thomas's employee as late as May 16, 2023, in his Third Amended Pretrial Statement in the Underlying Action. (ECF No. 65 Ex. A at 1.) Further, it asserts, whether Graffia was Thomas's employee is a matter of law, not a matter of opinion. *See Cox v. Caeti*, 279 A.2d 756, 758 (Pa. 1971) ("In ascertaining whether a person is an employee or an independent contractor, the basic inquiry is whether such person is subject to the alleged employer's control or right to control with respect to his physical conduct in the performance of the services for which he was engaged . . . If the facts as to such relationship are in dispute, it is the function of a jury to determine the precise nature of the relationship between the parties.")

In turn, Graffia argues that State Farm selectively quotes from the record to support its contention that he was Thomas's employee. In turn, this allows State Farm to rely on the employer's liability exclusion in the Policy to defeat any indemnification obligation. He contends that other parts of the record support a conclusion that he was not Thomas's employee, but State Farm ignores this evidence in order to deny coverage. Specifically, Graffia emphasizes that: (1) at trial, he referred to himself as a "helper" not an employee; (2) Thomas asserted in a verified discovery response, while represented by McDonnell, that he had no employees at the time of the incident; and (3) payments from Thomas to Graffia (in the negligible amount of

$20.00 per day for twelve hours of "work")[13] were inconsistently made, did not depend on the level of work performed by Graffia and continued for months after Graffia stopped "working" at HOBS.

The issue under consideration for purposes of the pending motion is whether State Farm acted in bad faith by taking the position in this case that Graffia was an employee of HOBS/Thomas, thereby allowing it to invoke an exclusion under the Policy. According to Count III of the Counterclaim, after Graffia amended his complaint in the Underlying Action to assert that he was not an employee, State Farm nonetheless persisted in its original coverage determination without any investigation, thereby ignoring disputed material facts about the employment status of Graffia. Thus, he contends, State Farm failed to further investigate whether Graffia was Thomas's employee before denying coverage.[14]

State Farm responds that it has not denied coverage at this point, but is seeking a declaration to that effect and thus has not engaged in bad faith. It also notes that Graffia has not identified what further investigation was possible given the disputed facts about Graffia's employment status. *See Sypherd Enterprises, Inc. v. Auto-Owners Ins. Co.*, 420 F. Supp. 3d 372, 381 (W.D. Pa. 2019) (insurer would not be liable for conducting a "brief" investigation when evidence supported its conclusion that the water damage fell within a clear policy exclusion).

While State Farm asserts that it does not have a duty to indemnify Graffia as the assignee of Thomas, the issue of coverage has not yet been resolved. State Farm defended Thomas in the

---

[13] Graffia testified at trial in the Underlying Action that he was later paid $40.00 per day and eventually $60.00 to $80.00 per day. (ECF No. 34 ¶ 56.)

[14] Certainly, Graffia took inconsistent positions in the Underlying Action as to his employment status. At the same time, he asserts that State Farm engaged in bad faith both by failing to argue in the Underlying Action that Graffia was an employee of Thomas, and by now arguing that Graffia was an employee.

Underlying Action under a reservation of rights and now seeks a declaratory judgment on the issue of its duty to indemnify. In light of Graffia's own inconsistent statements and the disputed factual record, the failure to further investigate Graffia's employment status before proceeding with a declaratory judgment action does not support a bad faith claim. Therefore, this aspect of Graffia's bad faith counterclaim may not be pursued.

      C.  <u>Settlement Negotiations</u>

    Graffia also argues that State Farm failed to engage in settlement negotiations during the time the trial was postponed in the Underlying Action. State Farm contends that it had no duty to engage in settlement negotiations on Thomas's behalf when it had a reasonable basis to conclude that there was no coverage under the Policy for Thomas's shooting of Graffia.[15]

An insurer's unreasonable refusal to engage in settlement negotiations can support a claim under Section 8371. *See Birth Ctr. v. St. Paul Cos., Inc.*, 787 A.2d 376, 389 (Pa. 2001). Graffia alleges that State Farm refused to engage in settlement discussions, and at this stage of this action, in which Graffia's allegations must be accepted as true, it is premature to reach any conclusion about whether State Farm's refusal, if true, was unreasonable.

**V.**    <u>**Conclusion**</u>

At this stage, the Court must accept the factual allegations in Count III as true. Therefore, pending the development of a full record, the Court must deny State Farm's partial motion to dismiss Count III of the Counterclaim. However, the alleged failure to further investigate Graffia's employment status before proceeding with a declaratory judgment action does not

---

[15] State Farms represents, but Graffia disputes, that it made a settlement offer which Graffia rejected. However, the Court is limited to the pleadings and matters of public record, neither of which permits a conclusion about whether an offer made.

support a bad faith claim, and therefore, this aspect of the bad faith counterclaim may not be pursued. Further, State Farm may renew a dispositive motion as to Count III at a later stage in this proceeding.

An appropriate order follows.


Dated: February 12, 2025                    /s/ Patricia L. Dodge
                                            PATRICIA L. DODGE
                                            United States Magistrate Judge